UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOHN LEE CARTER,

        Petitioner,               Case No. 1:19-cv-308

v.                                       Honorable Paul L. Maloney

RANDEE REWERTS,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner John Lee Carter is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a four-day jury trial in the Gladwin County Circuit Court, Petitioner was convicted of being a felon in possession of a weapon as well as a felon in possession of ammunition, in violation of Mich. Comp. Laws § 750.224f, and the use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On January 11, 2016, the court sentenced Petitioner as a third habitual offender to concurrent prison terms of 2 years, 10 months to 10 years for each possession count to be served consecutively to a 2-year sentence for felony-firearm.

On April 11, 2019, Petitioner commenced this action by filing an emergency motion requesting immediate *ex parte* relief. (ECF No. 1.) The Court construed Petitioner's motion as a habeas petition, Petitioner's sixth such petition. Petitioner's first five petitions were dismissed for failure to exhaust available state court remedies. The Court directed Petitioner to

file an amended petition on the approved form. (ECF No. 2.) Petitioner complied. The amended petition raises three grounds for relief, as follows:

> I. The cumulative errors committed during Mr. Carter's trial created a fundamental miscarriage of justice resulting in the conviction of a person who is actually innocent of the alleged offenses.
>
> II. The magistrate abused his discretion by issuing a search warrant for the Gladwin residence when probable cause was not established in Veltman's affidavit.
>
> III. The prosecutor and the judge abused their authority by pursuing charges against Mr. Carter after dismissing the charge for which probable cause was based and for allowing perjured testimony to support the amended complaint.

(Am. Pet., ECF No. 4, PageID.36-41.) Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they unexhausted, procedurally defaulted, or meritless. Upon review, it is apparent that Petitioner has still failed to exhaust his state court remedies before filing his petition in this Court. Accordingly, the Court will dismiss the petition without prejudice.

## Discussion

### I. Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The police discovered three firearms, with ammunition, while executing a search warrant at the residence of defendant's girlfriend, Melinda Henninger (Henninger), a residence that defendant was known to frequent. . . . Defendant argues that there was no probable cause to issue a search warrant for a firearm at Henninger's residence, where he often spent the night, because the affidavit for the search warrant omitted a material fact – that Henninger had said that there were no guns in the home during an interview conducted by Trooper Brooks. . . . Here, the affidavit was prepared by Michigan State Police Detective Sergeant William Veltman, who had executed over 200 search warrants throughout his 20 years of investigating thousands of criminal complaints, based on a complaint by Kim Holtz (Holtz) to Michigan State Police Trooper Eric Brooks. Holtz, who is Henninger's friend, told Trooper Brooks that on October 17, 2014, when she was present at

2

> Henninger's residence on Hawkins Road painting, defendant entered the room she was working on and told her to "get the f*** out." Upon that demand, she left the house, but while she was still making her way down the driveway, defendant pointed a .308 rifle inscribed with the words "bone collector" and caused her to fear for her life. Holtz also told Trooper Brooks that defendant had been convicted of a previous felony, which was confirmed, and that defendant kept additional guns at the residence. Detective Veltman subsequently observed a truck in the driveway of the residence on five or six occasions and this vehicle was registered to defendant. Veltman also recalled that a neighbor had told him on November 24, 2014, in a separate investigation, that he often hunted with defendant. Detective Veltman stated that his experience informed him that a person who had firearms on the property also likely had ammunition, that people possess firearms for periods of years, and that firearms possessed illegally are typically hidden. Detective Veltman requested a warrant to search the residence for a .308 rifle inscribed with "bone collector," other firearms, and ammunition, in furtherance of the investigation of felonious assault in which Holtz was the victim and potential charges of felon in possession of a firearm against defendant. Detective Veltman's affidavit was based on Trooper Brooks's police report, which indicated that Holtz had been visiting Henninger when defendant ordered her out of the home and pointed the white .308 rifle, the "bone collector," at her. The police report included information that Trooper Brooks had spoken with Henninger, who stated that she did not see the incident because she had been in a different room and that 'there [were] no weapons in the house except for a crossbow." However, Detective Veltman's affidavit did not include this information.

(Mich. Ct. App. Op., ECF No. 16-10, PageID.1332-1334) (footnotes omitted).

Prior to trial, Petitioner moved to quash the search warrant that resulted in seizure of the weapons and to suppress the evidence obtained by virtue of the warrant. The trial court heard argument on Petitioner's motion on July 27, 2015, and denied relief. (Mot. Hr'g Tr., ECF No. 16-3; Galdwin Cty. Cir. Ct. Order, ECF No. 16-10, PageID1353.)

Petitioner's case proceeded to trial during October and November of 2015. The prosecutor presented the testimony of six witnesses; the defense presented the testimony of eight witnesses, including Petitioner. After closings and instructions, the juror deliberated for less than two hours before returning the guilty verdicts.

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals. In his initial brief, filed with the assistance of his initial appellate counsel who was also

3

his trial counsel, Petitioner raised issues regarding the search warrant and his habitual offender sentence enhancement. (Pet'r's Initial Appeal Br., ECF No. 16-10, PageID.1408-1410.) Neither issue required the trial transcripts; so, they were not ordered.

Petitioner wanted to raise additional issues. (Pet'r's Mot. to Amend Br., ECF No. 16-10, PageID.1500-1502.) He obtained replacement appellate counsel and then sought an extension to obtain the trial transcripts and file an amended brief. (*Id*.) The court of appeals granted the motion. (Mich. Ct. App. Order, ECF No. 16-10, PageID.1341.) Petitioner, with the assistance of his new counsel, filed a supplemental brief raising one issue challenging the impartiality of the trial judge as demonstrated by the judge's "excessive and one-sided questioning of witnesses." (Pet'r's Supp. Appeal Br., ECF No. 16-10, PageID.1517.) By unpublished opinion issued August 10, 2017, the Michigan Court of Appeals rejected Petitioner's challenges to his convictions and sentences and affirmed the trial court.

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. He raised the same three issues he had raised in the Michigan Court of Appeals and introduced two new issues: trial counsel rendered ineffective assistance when he failed to get the case dismissed where there was no victim; and both appellate counsel rendered ineffective assistance because they failed to challenge the trial court's subject matter jurisdiction. (Pet'r's Appl. for Leave to Appeal, ECF No. 16-11, PageID.1578-1592.) By order entered March 5, 2019, the Michigan Supreme Court denied leave to appeal with regard to all issues except the challenge to the habitual offender enhancement—Petitioner had withdrawn the habitual offender issue to avoid having his application held in abeyance pending resolution of a similar case.[1] (Mich. Order,

---

[1] The Michigan Supreme Court held Petitioner's application for leave to appeal in abeyance pending resolution of the application for leave to appeal in *People v. Straughter*, No. 156198 (Mich.). There were two applications for leave to appeal that arose out of that criminal case. The first was an application for leave filed by the defendant, Straughter, under Case No. 156157; it was denied almost immediately. *People v. Straughter*, 904 N.W.2d 612 (Mich. 2017). The

ECF No. 16-11, PageID.1577.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Am. Pet., ECF No. 4, PageID.33.) Instead he filed his habeas petition.

As noted above, this is not Petitioner's first petition. He filed several previous petitions. Each prior petition was dismissed because Petitioner had failed to exhaust his state court remedies before filing his petition in this Court: *Carter v. Rewerts*, No. 1:18-cv-438 (W.D. Mich. Apr. 27, 2018) (application for leave to appeal still pending in Michigan Supreme Court); *Carter v. Rewerts*, No. 1:18-cv-1080 (W.D. Mich. Aug. 14, 2018) (same); *Carter v. Rewerts*, No. 1:18-cv-1323 (W.D. Mich. Jan. 4, 2019) (same); *Carter v. Rewerts*, No. 1:19-cv-141 (W.D. Mich. Mar. 13, 2019) (same)[2]; and *Carter v. Rewerts*, No. 1:19-cv-253 (W.D. Mich. Jun. 21, 2019) (failure to raise ineffective assistance of counsel issues at all levels of the Michigan courts).

## II. Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal

---

second was filed by the prosecutor under Case No. 156198; it remained pending for several months after Petitioner filed this petition. *People v. Straughter*, 930 N.W.2d 384 (Mich. 2019). The denial of defendant Straughter's application made it appear as if Petitioner's application was being held in abeyance pending another application that had already been denied. That was not the case. Petitioner moved to withdraw the habitual offender enhancement issue on January 16, 2019. His application was decided a few weeks later.

[2] At the time the Court dismissed the petition, the Michigan Supreme Court had, in fact, denied the application for leave to appeal such that Petitioner's state court remedies were exhausted. The petition, however, had been filed a few days before that event, so it could not reflect that fact, and Petitioner did not inform this Court of the Michigan Supreme Court's action before his petitioner was dismissed as unexhausted.

5

claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has plainly exhausted the search warrant/suppression issue he raises as habeas issue II at all levels of the state courts. Petitioner has also exhausted one of the claims his raises as habeas issue I: that the trial court denied Petitioner a fair trial by questioning witnesses. But, Petitioner raises several other claims as part of habeas issue I, including a claim that the trial judge constantly interrupted defense counsel interfering with counsel's effective assistance; the prosecutor misrepresented Petitioner's burden of proof; the prosecutor improperly vouched for prosecution witnesses and improperly denounced the credibility of two defense witnesses; the prosecution put on perjured testimony or testimony of questionable credibility; and the accumulation of these errors rendered Petitioner's trial unfair. Those issues have not been raised in the Michigan courts. Similarly, in habeas issue III, Petitioner raises a number of issues that he did not raise in the Michigan courts: a challenge to the subject matter of the trial court; a challenge to the amendment of the information; and an additional claim that the prosecutor presented perjured testimony. Moreover, through subsequent briefing, Petitioner references additional claims: a Confrontation Clause violation and a claim that he is actually innocent. Neither claim has been raised in the state courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c).

6

Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy. To properly exhaust his claim, Petitioner must file a motion for relief from judgment in the Gladwin County Circuit Court. If his motion is denied by the circuit court, Petitioner must appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the

7

petitioner has exhausted his claims in the state court. *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on March 5, 2019. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on June 3, 2019. Accordingly, absent tolling, Petitioner would have one year, until June 3, 2020, in which to file his habeas petition. Petitioner filed the instant petition on April 11, 2019, before the statute of limitations had even started to run.

The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007). The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United States Supreme Court. *Id.* at 332. Thus, so long as Petitioner's request for collateral review is pending, the time will not count against him.

But, the period of limitation has already started to run. It started when Petitioner's conviction became final on June 3, 2019, and has continued to run during the pendency of this habeas petition. *Duncan*, 533 U.S. at 181-82. It will continue to run until he files his motion and then it will run again after the Michigan Supreme Court rules on his application for leave to appeal to that court. The *Palmer* Court has indicated that thirty days is a reasonable amount of time for a petitioner to file a motion for post-conviction relief in state court, and another thirty days is a reasonable amount of time for a petitioner to return to federal court after he has exhausted his state-court remedies. *Palmer*, 276 F.3d at 781. *See also Griffin*, 308 F.3d at 653 (holding that sixty days amounts to a mandatory period of equitable tolling under *Palmer*).

Petitioner has more than sixty days remaining in his limitations period. Assuming that Petitioner diligently pursues his state-court remedies and promptly returns to this Court after the Michigan Supreme Court issues its decision, he is not in danger of running afoul of the statute of limitations. Therefore, a stay of these proceedings is not warranted and the Court will dismiss the petition for failure to exhaust available state-court remedies. Should Petitioner decide not to pursue his unexhausted claims in the state courts, he may file a new petition raising only exhausted claims—habeas issue II and that part of habeas issue I that challenges the trial court's questioning of witnesses—at any time before the expiration of the limitations period.

## III. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

I have concluded that Petitioner's application is properly denied for lack of exhaustion. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id*.

I find that reasonable jurists could not find it debatable whether Petitioner's application should be dismissed for lack of exhaustion. Therefore, a certificate of appealability will be denied. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order and judgment dismissing the petition for failure to exhaust state-court remedies and denying a certificate of appealability.

Dated:  March 16, 2020            /s/ Paul L. Maloney
                                                                               Paul L. Maloney
                                                                               United States Magistrate Judge